U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

2015 MAR 23 ⊃ 4: 20

UNITED STATES OF AMERICA

v.                                          No. 14-CR-114-01-PB

WILLIAM ALBA
aka "Chichi"

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, John P. Kacavas, the United States Attorney for the District of

New Hampshire, and the defendant, William Alba, and the defendant's attorney, Paul J. Garrity,

Esquire, enter into the following Plea Agreement:

1. **The Plea and The Offense.**

The defendant agrees to plead guilty to Count One of the indictment charging the

defendant with Conspiracy to Distribute a Controlled Substance in violation of Title 21 U.S.C.

§841(a)(1) and §846.

2. **The Statute and Elements of the Offense.**

A.      Conspiracy to Distribute Controlled Substances.

Title 21, United States Code, Section 846 provides, in pertinent part:

Any person who attempts or conspires to commit any offense defined in this
subchapter shall be subject to the same penalties as those prescribed for the offense,
the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 846 (West 2014).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, that the agreement specified in the indictment, and not some other agreement or

−1−

agreements, existed between at least two people to distribute or possess with intent to distribute, controlled substances; and

Second, that the defendant willfully joined in that agreement.

Pattern Jury Instructions: First Circuit Criminal Cases, Instruction 4.03 (1998).

3. **Offense Conduct**.

In the fall of 2013, law enforcement officers began an investigation of several individuals including, Samuel Garcia (Garcia) and Jennifer Nunez (Jennifer), and their involvement in a conspiracy to distribute oxycodone.   The investigation ultimately led to a court order authorizing the interception of wire and electronic communications over several cellular telephones (Target Telephones) used by Garcia and Jennifer.   Intercepted communications over the Target Telephones confirmed that several customers regularly ordered significant quantities of oxycodone pills from Garcia and Jennifer, which were then sold to other individuals in the Manchester area.

During the intercepted calls, investigators identified several telephone numbers that frequently called into the Target Telephones, including a telephone number used by the defendant. The intercepted telephone calls showed that from July 1, 2014 through August 25, 2014, the defendant ordered significant quantities of oxycodone pills from Garcia and Jennifer.   In addition, a hidden camera at the Manchester residence of Garcia and Jennifer revealed that during several of the above interceptions, the defendant arrived at Garcia and Jennifer's apartment shortly after contacting Garcia or Jennifer and ordering a quantity of pills.

On September 2, 2014, members of the Manchester Police Department (MPD) executed a search warrant at the defendant's residence.   At the time of the execution of the search warrant, the defendant's live-in girlfriend, gave oral consent to search a vehicle at the property.   Law

–2–

enforcement searched the vehicle and located a shoebox on the floor behind the driver's seat. Inside the box was a pair of shoes with two stacks of money on top of the shoes. According to the defendant's girlfriend, the shoe box belonged to the defendant. A formal count of the money revealed a total of $4,055.00.

On September 2, 2014, the defendant was arrested. The defendant waived his *Miranda* rights and agreed to speak with law enforcement. In a statement which was recorded on audio and video, the defendant stated that he arrived in New Hampshire approximately one year earlier and met Garcia. The defendant admitted that he typically purchased 30 mg oxycodone pills from Garcia but that he also purchased oxycodone pills from Jennifer. The defendant stated that he purchased the oxycodone pills at Garcia and Jennifer's residence.

The defendant admitted that he purchased approximately 400-500 oxycodone pills a week and paid Garcia and Jennifer $23 per oxycodone pill. The defendant stated that he had approximately 6-7 customers. He charged his customers $26 per oxycodone pill. The defendant claimed that his largest customer occasionally purchased 100 oxycodone pills at one time. The defendant admitted that the money seized from the shoe box belonged to him and was money derived from the sale of oxycodone.

4. **Penalties, Special Assessment and Restitution**.

The defendant understands that the penalties are:

A.     A maximum prison term of twenty years;

B.     A maximum fine of $1,000,000.00 (21 U.S.C. §841); and

C.     A term of supervised release of at least 3 years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

–3–

The defendant also understands that he will be required to pay a special assessment of $100 for each count of conviction, at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or §3663A.

5.   **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines.   The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

–4–

6. **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense.   The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

7.  **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate him; and

E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the

presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

8. **Acknowledgment of Guilt; Voluntariness of Plea.**

The defendant understands and acknowledges that he:

A.     Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.     Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C.     Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.     Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.     Is completely satisfied with the representation and advice received from his undersigned attorney.

9. **Scope of Agreement.**

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority.   The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea.   The defendant understands such matters are solely within the discretion of the specific non-party government agency involved.   The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

10. **Collateral Consequences.**

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

11. **Satisfaction of Federal Criminal Liability; Breach.**

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case.   The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

12. **Waivers.**

A.     **Appeal.**

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.     His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.     The sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

−8−

B.      **Collateral Review.**

The defendants understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.      His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.      The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waive of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel.   The defendant's waiver of his right collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C.      **Freedom of Information and Privacy Acts.**

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D.    **Appeal by the Government.**

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the

Government to pursue an appeal as authorized by law.

13.   **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been

entered into other than those set forth in this Plea Agreement or revealed to the Court, and none

will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

14.   **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this

Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the

United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

15.   **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea

Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

JOHN P. KACAVAS
United States Attorney

Date:  _3-23-15_

By: _____
Debra M. Walsh
Assistant U.S. Attorney
N.Y. Bar # 2369627
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
deb.walsh@usdoj.gov

−10−

The defendant, William Alba, certifies that he has read this 11 page Plea Agreement and that he fully understands and accepts the terms thereof.

Date: _3/14/15_

_William alba_
William Alba, Defendant


I have read and explained this 11 page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _3/4/15_

_____
Paul J. Garrity, Esquire
Attorney for William Alba